Jack D. Edwards, 6-3877
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY   83118
Phone:   307.883.2222
Fax:   307.883.0555
jack@edwardslawofficepc.com
kaden@edwardslawofficepc.com

Branden S. Vilos, 6-4431
Attorney at Law, P.C.
P.O. Box 2837
1130 Sheridan Ave., Ste. 205
Cody, WY 82414
Phone: 307.213.1147
Fax: 307.213.1194

*Attorneys for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DEBRA LARAMORE, as Wrongful Death Representative of BUCK MICHAEL LARAMORE (deceased), and BRANDI LARAMORE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> TOWN OF THERMOPOLIS POLICE DEPARTMENT, and MICHAEL GUERRERO MASCORRO, an individual, <br><br> Defendants. | Civil No.: 1:25-cv-00105 |

## PLAINTIFF'S FIRST COMPLAINT

1

PLAINTIFFS Debra Laramore, in her capacity as Wrongful Death Representative of Buck Michael Laramore (deceased), and Brandi Laramore, an individual, by and through counsel, hereby file this Complaint against Michael Guerrero Mascorro and the Thermopolis Police Department.

## INTRODUCTION

1)     The Plaintiffs seek redress from this Court for the illegal conduct of Michael Guerrero Mascorro and the Thermopolis Police Department for the wrongful death of Buck Laramore who was slain in his home on April 28, 2023 by a police officer who entered without a warrant or exigent circumstances in violation of the Wyoming Constitution and the Constitution of the United States of America.

2)     "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)

3)     "The freedom secured by the Constitution consists, in one of its essential dimensions, of the right of the individual not to be injured by the unlawful exercise of government power." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2605 (2015). "Thus, when the rights of persons are violated, the Constitution requires redress by the courts." *Id.*

4)     Sergeant Michael Mascorro of the Thermopolis Police Department believed he had probable cause to arrest Buck Laramore on a misdemeanor charge of

interference for providing false information during an investigation at the Thermopolis McDonalds. After speaking with the Deputy County Attorney and given the recommendation that he issue Buck a "ticket," Mascorro went to Buck's house, without a warrant, to arrest him for the misdemeanor. Over three hours after the conversation that gave rise to the interference charge, Mascorro climbed the steps to the Laramore home (the "Home"). Buck came to the door. Mascorro asked Buck to come outside and Buck said "No." Mascorro then told Buck he was going to jail. Then Mascorro threatened to break down Buck's door. Buck never exited his home and shut and locked the door. Mascorro broke down the door and forced his way into Buck's home without a warrant and a shootout ensued leaving Buck dead and Mascorro wounded.

## PARTIES AND JURISDICTION

5)    The preceding paragraphs are hereby realleged as if fully restated herein.

6)    Plaintiff Deb Laramore[1] is an individual, resident of the State of Wyoming, and the duly appointed Wrongful Death Representative of her son, Buck Michael Laramore.

7)    Deb Laramore was appointed by the District Court of the Fifth Judicial District in and for Hot Springs County, Wyoming by Hon. Bobbi Overfield as Wrongful Death Representative of her son, Buck Michael Laramore by *Order*

---

[1] For clarity, the Laramore family members may be referred to by their first names.

*Appointing Wrongful Death Representative* dated December 27, 2024, a copy of which is attached hereto as **Exhibit 1.**

8)      This matter is brought for the benefit of the wrongful death beneficiaries who have sustained damage as a result of Buck's wrongful death.

9)      Plaintiff Brandi Laramore is an individual, resident of the State of Wyoming and surviving spouse of Buck Laramore.

10)     Brandi is a wrongful death beneficiary and has her own individual claims against the Defendants.

11)     Defendant Town of Thermopolis Police Department (sometimes referred to as the "Police Department") is a department of the Town of Thermopolis, a Municipal Corporation and "local government" entity pursuant to W.S. § 1-39-103(a)(ii).

12)     Defendant Michael Guerrero Mascorro (sometimes referred to as "Mascorro") is an individual and resident of the State of Wyoming. Mascorro is a "public employee" pursuant to W.S. § 1-39-103(a)(iv)(A). He is a peace officer who is employed by the Thermopolis Police Department.

13)     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1983, as amended.

14)     Certain claims by Plaintiffs in this matter are brought pursuant to the Wyoming Governmental Claims Act, which waives immunity for governmental entities and individuals for designated acts or omissions. Plaintiff asserts that the

acts and omissions of Defendants Thermopolis Police Department and Michael Mascorro fall within the exclusion from immunity for Peace Officers, W.S. § 1-39-112, which provides "A governmental entity is liable for damages resulting from tortious conduct of peace officers while acting within the scope of their duties."

15)    Plaintiffs assert that Michael G. Mascorro was acting on behalf of, and supervision of, Defendant Thermopolis Police Department, and that the Thermopolis Police Department is responsible for Mascorro's acts and omissions; Mascorro's execution of established policies, customs and practices, and their failures to properly train, supervise and correct the actions of Mascorro.  To the extent pertinent to Plaintiffs' claims for violation of civil rights, Plaintiffs makes the same allegations with respect to the relationship between and among the Thermopolis Police Department and Mascorro.

16)    Plaintiffs' claims are grounded in the United States Constitution, particularly those concerned with due process, wrongful entry, search and seizure, and use of force, including but not limited to the Fourth, Fifth and Fourteenth Amendments, as well as 42 U.S.C. §§ 1983 through 1988.

17)    Alternatively, this Court also has federal supplemental jurisdiction over so much of this action as is based on state law pursuant to 28 U.S.C. § 1367.

18)    The state claims are pursuant to relevant provisions of the Wyoming Constitution, in particular dealing with due process, search and seizure, and claims against the government and government agents.  Plaintiffs assert this Court has jurisdiction over such claims.

19)     Venue is proper in this Court because the Causes of Action arose in Hot Springs County, Wyoming, the acts and practices complained of occurred there, it is where the Defendant Town of Thermopolis does business and may be found, and it is the county of residency for Defendant Michael G. Mascorro.

20)     Jurisdiction over claims pursuant to the Governmental Claims Act is vested in the District Courts of the State of Wyoming. W.S. § 1-39-117(a). Venue for such claims is vested in the venue in which the public employee resides, or where the cause of action arose, or in Hot Springs County. W.S. § 1-39-117(b). Jurisdiction and venue for claims under the Governmental Claims Act are therefore proper in the U.S. District Court for the State of Wyoming.

21)     For so much of this action as is based on state law, Plaintiffs have fully satisfied the requirements of Article 16, § 7 of the Wyoming Constitution by filing with Defendant Thermopolis Police Department's designated officer a full itemized statement in writing included in Plaintiffs' Notices of Claim and certified by each Plaintiff under penalty of perjury.  Additionally, Plaintiffs' Notices of Claim fully satisfy the provisions of the Wyoming Governmental Claims Act, W.S. §1-39-101, et. seq., which is a condition precedent to the filing of a state law tort action against the Defendant Thermopolis Police Department and its peace officers. Specifically, Plaintiffs' Notices of Claim were made upon the Claim Form provided by the State of Wyoming. The Claim Form was properly completed, signed by each Plaintiff under penalty of false swearing, and notarized. Each of the original Notices of Claim was submitted to Defendant Thermopolis Police Department, an agency of the Town of

Thermopolis, Hot Springs County, Wyoming (sometimes referred to as the "Town") by serving Tracey Van Huele, Clerk Treasurer of the Town of Thermopolis at 420 Broadway Street, Thermopolis, WY 82443 on April 23, 2025 by UPS Next Day Air, hand delivery, Tracking No. 1ZR8G6780124926056. A copy of said Notices of Claim and proofs of service for each official are attached hereto as **Exhibit 2**.

22)    By way of two Notices of Claim delivered as required by statute, delivered by UPS Next Day Air to the Thermopolis Town Clerk, Plaintiffs placed the defendants on notice, pursuant to W.S. § 1-39-113, of their claims.

23)    The Notice was delivered on April 23, 2025, and presumably filed that same day. The notice was delivered within the two year time frame contemplated by the Wyoming Governmental Claims Act. This action is filed within the one year period following the notice of claim's delivery to the State.

24)    Each Plaintiffs' claim were filed and authenticated by signature, under penalty of false swearing, as required and in conformity with the statutory form at W.S. § 1-39-113(e). Plaintiffs allege, therefore, that each Plaintiff has met the requirements of the Governmental Claims Act and the Wyoming Constitution concerning presentation of claims to the Thermopolis Police Department and its various departments, divisions, and agents. In addition to the proper affirmation by Plaintiff, the notice generally specified the acts and omissions which were the subject of the claim, as well as itemizing claims which are set forth later in this Complaint under the heading "Damages," specifying the categories and amounts of damages claimed by Plaintiffs.

25)     Plaintiffs allege that to the extent any claims fall within the purview of the Wyoming Governmental Claims Act, Plaintiffs have adequately provided notice and now pleads the details of that notice sufficient to invoke the jurisdiction over the subject matter, the substance, and details of the claims in this Complaint.

## FACTUAL BACKGROUND

26)     On April 28, 2023 Mascorro, Hot Springs Deputy Sheriff Shayna Cox, her K9 partner and Hot Springs County Health Inspector, Jamie George, initiated a search of the McDonalds restaurant in Thermopolis, Wyoming due to rumors of recent drug activity in the vicinity.

27)     The search party found a plastic container with a white substance in it on the baby changing station in the restroom that they suspected was methamphetamine.

28)     Mascorro suspected that Buck Laramore was the last person to leave the restroom.

29)     Mascorro found Buck and asked him about the drugs found in the bathroom and asked Buck multiple times to submit to a chemical test to exonerate himself.

30)     Mascorro told Buck he would get a search warrant to collect Buck's urine if Buck didn't voluntarily comply.

31)     Buck persisted in refusing Mascorro's requests for a urine sample.

32)     Buck then tried to break off the encounter to go back to work and was stopped by Mascorro.

33)  Mascorro then asked Buck for his name, address, and date of birth.

34)  Buck provided Mascorro with the wrong spelling of his last name and the wrong year of his date of birth.

35)  Buck refused to give Mascorro his address.

36)  Mascorro asked, "Are you here in town?"  Buck replied, "Yes."

37)  Buck said, "I prefer not to give you my address," to which Mascorro replied, "okay you can go."

38)  Buck and Mascorro then parted ways.

39)  After the interaction, Buck told his coworker, "They want to know my address, they want to know this, they are trying to drug test me. But I'm not doing anything until I see a warrant."

40)  Immediately Mascorro asked his dispatcher to do a records check for Buck at approximately 8:59 am.

41)  Within 3 minutes dispatcher Judy Randall correctly identified Buck and stated that Buck was not wanted and didn't have any warrants outstanding against him.

42)  Mascorro told the health inspector that Buck was being "uncooperative."

43)  Then Buck went home because he felt he was being harassed.

44)  Buck advised his manager he was leaving by text message and advised them not to give law enforcement his "address without a warrant."

45)  Buck went to his home on Canyon Hills Drive after leaving McDonalds and laid down in bed with his wife Brandi for a nap.

46)    Mascorro left McDonalds at approximately 9:29 am.

47)    Mascorro returned to McDonalds and at approximately 10:42 am and told Craig, the manager of McDonald's, that Buck gave him a false name and date of birth.

48)    Later that day, Mascorro called the Deputy Hot Springs County Attorney ("DCA").

49)    Mascorro contacted the DCA because he was unsure if he had authority to arrest Buck for the methamphetamine left in the bathroom.

50)    Mascorro also was unsure if he had authority to arrest Laramore for interference.

51)    At the time Mascorro spoke with the DCA, he knew Buck's name with proper spelling and he knew Buck's correct date of birth.

52)    Mascorro and the DCA spoke about probable cause to arrest Laramore for the methamphetamine left in the McDonalds bathroom.

53)    Mascorro and the DCA agreed there was not enough probable cause to prove the drugs in the bathroom belonged to Laramore.

54)    The DCA advised that there was enough probable cause to arrest Buck for misdemeanor interference.

55)    The DCA told Mascorro that "she would probably just write Laramore a ticket."

56)    Mascorro said that the DCA said he could issue a citation or make an arrest and Mascorro said he decided to make an arrest.

57)     Prior to arrival at the Home, Mascorro received a phone call from his dispatcher, Judy Randall, and was told Buck's criminal history had multiple assaults on it.

58)     Mascorro then made a traffic stop and issued a motorist a warning for speed and failure to obey a traffic control device.

59)     Then, around 12:33 pm, he arrived at the Home.

60)     Brandi woke to the sound of someone "pounding on the door."

61)     Bodycam evidence shows that Mascorro opened up the storm door and pounded on the door, then allowed the storm door to close.

62)     Brandi went to the door and found Mascorro there, saying he had come to talk with Buck.

63)     Brandi left the door open and went to get Buck.

64)     The front storm door was white metal and glass. It had no handle, but its front glass allowed for reaching through it and pulling it open. There was a wooden interior door just behind the storm door.

65)     Buck arrived at the door, opening the wooden interior door and leaving the storm door closed and asked, "How's it going?"

66)     Mascorro said, "Pretty good…can I talk to you please?"

67)     Mascorro asked Buck Laramore to come outside and talk.

68)     "No sir," answered Laramore.

69)     Fifteen seconds into the encounter, Mascorro told Laramore he was "going to jail today," and Laramore said, "No, I'm not" and asked why.

70)     Mascorro repeated, "you're going to jail."

71)     Buck said, "For what?."

72)     Twenty-two seconds into the encounter, Mascorro decided to use force.

73)     Mascorro sternly said, "If you make me break this door down, I will."

74)     Buck asked once again, "For what, Sir?"

75)     Mascorro responded by stating that Buck "interfered" with him and told Buck to come outside.

76)     Never leaving the security of his home, Buck asked how he interfered.

77)     Mascorro responded that this situation can go "one of two ways;" either Buck comes out willingly or Mascorro is going to "break the door in."

78)     Mascorro repeatedly said he would break the door down if Buck "made" him.

79)     Buck again asked why he was going to jail. Mascorro said that Buck had interfered with his investigation, "you gave me the wrong name, wrong date of birth."

80)     Buck then told Mascorro his surname spelling and date of birth, then shut his front door and deadbolted it.

81)     Mascorro said "Buck I am going to break this and come in after you!"

82)     Buck and Brandi never consented to Mascorro's entry into the Home.

83)     Mascorro rammed the locked wooden interior door with his left shoulder.

84)     At the same time, Brandi put her hands on the door to brace it shut.

85)     Mascorro then switched to his right shoulder and rammed the interior door twice more.

86)    Mascorro rammed with his right shoulder again, damaging the interior door, breaking the doorjamb, and sending the deadbolt flying inside the home.

87)    Mascorro then forced himself across the threshold of the Laramore family home with his hand on his pistol.

88)    Immediately he met Brandi, two hands raised indicating stop!

89)    "Stop breaking my door!"  Brandi yelled.

90)    Mascorro then forced the broken interior door shut.

91)    Just then, Buck Laramore aimed his .45 directly at Mascorro and fired one time, striking him.

92)    Buck fired another time.

93)    Mascorro yelled, "Stop, Stop!"

94)    Buck never fired again.

95)    Mascorro did not retreat.

96)    Mascorro pulled his pistol and fired about seven shots blindly towards Buck.

97)    Mascorro then got up and moved backwards, facing the room Buck was in with his pistol pointed in Buck's direction.

98)    Brandi Laramore screamed frantically.

99)    Around this time, Brandi Laramore rushed her dog and herself to safety in the bathroom.

100)    Mascorro yelled on his radio "shots fired" to his dispatcher.

101)    Mascorro could have retreated but decided not to.

102)    Buck stood up and walked out of the room, unarmed, and looked out at Mascorro.

103)    Mascorro then fired three shots.

104)    Laramore's body had "an obvious reaction," indicating a hit.

105)    Buck then yelled, "Stop, stop."

106)    Mascorro commanded Laramore to show his hands.

107)    Buck never stood up again.

108)    Mascorro was not authorized to enter or remain in Brandi & Buck's home at anytime.

109)    Mascorro knew he was not authorized to enter or remain in Brandi & Buck's home on April 28, 2023.

110)    Mascorro trespassed into Brandi & Buck's home.

111)    Mascorro's intent when entering into Brandi & Buck's home was to handcuff and remove Buck from the home.

112)    Mascorro forcefully and unlawfully entered into Brandi & Buck's home.

## LEGAL STANDARDS

113)    Prior to this incident, the Wyoming Supreme Court held that a warrantless arrest in an individual's home, "not shown by the State to be justified under any of the exceptions to the warrant requirement" is a violation of the individual's Fourth Amendment right. *Woods v. State of Wyoming*, 2023 WY 32, ¶ 24 (Wyo. 2023).

114)    *United States v. Payton* held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest even if probable cause to arrest the individual exists." 445 U.S. 573, 576 (1980).

115)    "It is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of "'exigent circumstances."'" *McInerney v. King*, 791 F.3d 1224, 1231 (10th Cir. 2015) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)).

116)    Absent consent or exigent circumstances, a law enforcement officer may not cross the threshold of a home without a warrant. *Howard v. Dickerson*, 34 F. 3d 978, 981 (10th Cir. 1994)

117)    The Fourth Amendment prohibits warrantless arrest in home, absent exigent circumstances, even if statute authorizes action and probable cause exists

118)    An individual has an interest in the privacy of his home which is protected by the Constitution.

119)    An individual has a right to be free of a warrantless entry into his home. Absent probable cause and exigent circumstances, police officers may not violate that right. *Woods v. Cheyenne*, et al., 2:23-cv-00035-KHR, ECF 53, p. 9 (D. Wyo. May 30, 2024) citing *Soza v. Demsich*, 13 F.4th 1094, 1106 (10th Cir. 2021).

120)    Police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Id*. at ECF 13 *citing Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459, 153 L. Ed. 2d 599 (2002).

121)    This right to privacy in one's home to be free from a warrantless arrest on a minor charge was clearly established in 2023. *See Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011) ("When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.")

122)    The rule that "a person is not required to retreat and may stand his ground and kill his assailant if he is assaulted, without fault, in this own home" is known as the "castle doctrine." *Drennen v. State*, 2013 WY 118, ¶ 24 and n.4, 311 P.3d 116, 125 and n.4 (Wyo. 2013).

123)    In *State v. Flory*, 40 Wyo. 184, 276 P. 458, 462 (Wyo. 1929), we again recognized that "a man need not retreat if assaulted, without fault, in his own home . . . ."

124)    The rule that "[t]he right of self-defense is not available to an aggressor who provokes the conflict, unless the aggressor withdraws in good faith and informs the other person by words or actions of a desire to end the conflict," *Widdison v. State*, 2018 WY 18, ¶ 14 (Wyo. 2018) citing *Haire v. State*, 2017 WY 48, ¶ 36, 393 P.3d 1304, 1314 (Wyo. 2017), applies whether the person is in her residence or not.

125)    Title 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
> . . .

126) It was Mascorro's own reckless and deliberate conduct that unreasonably created his use of force. *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 840 (10th Cir. 1997).

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 DELIBERATE INDIFFERENCE BY FAILURE TO TRAIN OR ACT (AS TO DEFENDANT THERMOPOLIS POLICE DEPARTMENT)

127) The preceding paragraphs are hereby realleged as if fully restated herein.

128) Both Plaintiffs assert this cause of action, deliberate indifference by failure to supervise, train or act, against the Police Department.

129) A failure to train claim requires that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of [Fourth Amendment] rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need for additional training." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)

130) The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle

recurring situations, thus presenting an obvious potential for constitutional violations.

131)    To maintain a valid claim against a municipality, there must be a constitutional violation by one of its law enforcement officers.

132)    Buck & Brandi Laramore, at all times, had a right not to be deprived of privacy, liberty, and bodily integrity without due process of law pursuant to the Fourth and Fourteenth Amendment of the United States Constitution.

133)    Throughout the time Buck spoke with Mascorro at the threshold of his home, behind the closed storm door, Buck showed a conscious and deliberate intention to protect the privacy of his home.

134)    When Mascorro first asked Buck to come outside, Buck had no reasonable belief that he was under arrest.

135)    A reasonable person would have believed that Mascorro was at his door for a "knock and talk," a consensual encounter.

136)    With no knowledge that he was under arrest, Buck refused Mascorro's invitation outside by respectfully stating, "No, sir."

137)    Further, by closing and locking his interior door, Buck showed intention to maintain the privacy of his home.

138)    Regarding the alleged charge of interference, there was no risk of destruction of evidence, Buck did not display any aggressive behavior and Buck was not committing a misdemeanor in Mascorro's presence by refusing to go outside.

139)   There was no immediate and pressing concern such as danger to the occupants of the home.

140)   There was no concern for officer or public safety presented to Mascorro.

141)   Since Mascorro was at Brandi & Buck's residence over three hours past the alleged infraction, no reasonable officer would believe that the Mascorro's actions were allowed under Wyoming law or the Fourth Amendment.

142)   Mascorro violated Brandi & Buck's clearly established rights when, without a warrant, he opened the closed storm door, broke down the deadbolted interior door, crossed the threshold and entered their home.

143)   "[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982).

144)   Mascorro, as an officer of the town of Thermopolis, was acting under the color of state law.

145)   Although Mascorro was misusing the authority of the state, he was clothed with the authority of the state. He was on duty, wearing a uniform, badge, gun and driving a marked patrol car.

146)   No reasonable officer would have thought that pursuit of a man for a minor offense of interference, by giving the wrong date of birth, constituted the sort of exigency permitting breaking into Brandi & Buck's home without a warrant over three hours after the alleged incident.

147)   A DCI agent who was investigating the shooting in 2023 wrote in his report that:

"MASCORRO explained he attended the Wyoming Law Enforcement Academy (WLEA) and completed the full Peace Officer Basic (POB) course. Sgt MASCORRO stated since completing the POB course and returning to his agency (TPD) he had completed a couple additional training courses. Those courses were in the field of deescalation. Sgt MASCORRO had not had any additional use of force training since leaving the academy. Sgt MASCORRO does not currently hold any specialty certifications related to use of force."

148)    Additionally, Mascorro told the DCI agent that he had received multiple use of force complaints against him and had been investigated by Wyoming Peace Officer Training and Standards (WYPOST).

149)    Mascorro was investigated on a use of force complaint from an arrest Mascorro made on April 2, 2018 that resulted in the arrestee getting injured and requiring medical attention. As a result of the investigation Mascorro received an oral reprimand.

150)    Mascorro was investigated for an incident where Mascorro was accused of using excessive force by kicking a man to the ground during his 2020 arrest.

151)    Mascorro was investigated for an incident from 2021 where it was alleged that Mascorro unnecessarily escalated a bar-check situation that turned into a fight at a Thermopolis saloon, the One-Eyed Buffalo.

152)    Mascorro was investigated for an incident from July 2022 for alleged use-of-force misconduct and an alleged improper or illegal traffic stop.

153)    In the matter at hand, Mascorro ignored the suggestion by the DCA that he simply issue a ticket, and went to Buck's house to initiate an immediate arrest.

154)    The police department was clearly aware that their failure to properly oversee and train Mascorro was substantially certain to result in violation of the constitutional rights of the Thermopolis citizenry.

155)    Despite having multiple use of force complaints and investigations, as of 2023, Mascorro's only use of force training was at his initial police academy training seven (7) years prior.

156)    Mascorro did not receive any remedial training on use of force following numerous use of force investigations.

157)    At the time of the incident, Mascorro had been a law enforcement officer for seven (7) years, was a sergeant and second in command of the police department.

158)    Although inadequately trained and supervised, the police department made Mascorro responsible for his own training and responsible to oversee and supervise the use of force training by his subordinate officers.

159)    Clearly an agency whose second in command has numerous use of force complaints and investigations should have some post academy use of force training, if not as part of a regular schedule, at a minimum on a remedial basis in response to a number of complaints and investigations lodged against Mascorro.

160)    Certainly the facts alleged herein illustrate that violation of federal rights is a highly predictable or plainly obvious consequence of the police department's action or inaction.

161)    Upon information and belief, the police department failed to supervise, oversee and train Mascorro in specific skills needed to handle recurring situations,

use of force situations, warrantless arrests, thus presenting an obvious potential for constitutional violations.

162) The harm caused in this case, Buck's death, was preventable and avoidable by adequate supervision, oversight, and training.

163) Mascorro was not properly supervised and trained in use of force.

164) Mascorro was not properly supervised or trained on warrantless arrests.

165) Mascorro has a pattern and practice of using force in situations that violates department policy, the law and is not objectively reasonable.

166) The police department was on notice and was deliberately indifferent to the harm that would likely result from the failure to supervise and train Mascorro and other officers.

167) Under the facts available to the police department and its policymakers, they knew or should have known that the lack of adequate training was substantially certain to result in a violation of citizen's rights protected by the Constitution or laws of the United States, of citizens with whom the inadequately trained officers come into contact with.

168) The police department failed to act, oversee, supervise, train and discipline Mascorro.

169) Mascorro's conduct was a constitutional violation against Brandi & Buck that directly caused Buck's death and injury to the Plaintiffs.

## SECOND CAUSE OF ACTION

**VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983**
**OFFICIAL POLICY, PRACTICE OR CUSTOM**
**(AS TO DEFENDANT TOWN OF THERMOPOLIS POLICE DEPARTMENT)**

170)    The preceding paragraphs are hereby realleged as if fully restated herein.

171)    Both Plaintiffs assert this cause of action, constitutional violations based on official policy, practice, or custom, against the Police Department.

172)    In order to prevail on the plaintiff's § 1983 claim against defendant Town of Thermopolis Police Department alleging liability based on an official policy, practice, or custom, the plaintiff must prove each of the following elements by a preponderance of the evidence:

　　　　a.  Mascorro acted under color of state law;

　　　　b.  the act[s] of Mascorro deprived the plaintiffs of particular rights under the laws of the United States, the State of Wyoming, and the United States Constitution;

　　　　c.  Mascorro acted pursuant to a widespread or longstanding practice or custom of the defendant police department; and

　　　　d.  the defendant police department's widespread or longstanding practice or custom caused the deprivation of the plaintiff's rights by Mascorro; that is, the police department's widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009).

173)    A municipal policy or custom may take one of the following forms:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions —and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)

174)    Deficiencies in hiring is also a basis upon which to implicate a municipality.

175)    As outlined above, Mascorro had a significant history of questionable use of force situations that call into question the police department's policies, practices, and customs.

176)    Defendant Police Department, through its adoption of inadequate customs, procedures, and practices, under the color of State Law, acted with deliberate indifference to ensuring its law enforcement officers maintain compliance with the Wyoming Constitution, the Constitution of the United States, Wyoming Statutes and other state and federal laws and regulations.

177)    The Thermopolis Police Department improperly and deficiently hired, trained, oversaw and supervised Mascorro.

178)    The Thermopolis Police Department failed to train its employees with respect to a clear constitutional duty that will arise in situations that its employees are certain to face, such as use of force situations.

179)    These deficiencies and failures alleged herein amount to deliberate indifference.

180)    Defendants caused Plaintiffs damages.

181)    Defendants are liable to the Plaintiffs for all resulting damages which are more particularly set forth below in the "Damages" section of this Complaint.

## THIRD CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983
### FOURTH AMENDMENT UNREASONABLE ENTRY AND SEARCH OF THE LARAMORE HOME
### (AS TO DEFENDANT MICHAEL G. MASCORRO, INDIVIDUALLY)

182)    The preceding paragraphs are hereby realleged as if fully restated herein.

183)    Both Plaintiffs assert this cause of action against Defendant Mascorro.

184)    In this case, Brandi Laramore and Debra Laramore claim that Mascorro, while acting under color of law wrongfully, negligently, and/or intentionally committed acts that violated Brandi and Buck's constitutional right not to be subjected to an unreasonable and illegal entry and search of their home.

185)    Under the Fourth Amendment to the United States Constitution, every person has the right not to be subjected to an illegal entry or unreasonable search of one's home.

186)    Mascorro, under the color of law, intentionally, illegally and unconstitutionally entered into Brandi & Buck's home.

187)    As a result of Mascorro's illegal and unconstitutional entry and unreasonable search of their home, the Plaintiffs were damaged.

188)    Buck was unlawfully seized and killed as a direct and proximate cause of Mascorro's illegal and unconstitutional entry and unreasonable search of the home.

189)   Brandi was unlawfully seized and restrained from movement in her own home by a peace officer who entered without a warrant or legal justification and in violation of her constitutional rights.

190)   Defendant Mascorro caused Plaintiffs damages.

191)   Defendants are liable to the Plaintiffs for all resulting damages, including punitive damages, which are more particularly set forth below in the "Damages" section of this Complaint.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983
### EXCESSIVE FORCE
### (AS TO DEFENDANT MICHAEL G. MASCORRO, INDIVIDUALLY)

192)    The preceding paragraphs are hereby realleged as if fully restated herein.

193)    Both Plaintiffs assert this cause of action against Defendant Mascorro.

194)    These acts violated Brandi & Buck's constitutional right not to be subject to excessive or unreasonable force.

195)    Mascorro used more force than necessary to detain and arrest Buck and ended up shooting and killing him.

196)    Mascorro used excessive force by entering Brandi and Buck's house without a warrant, breaking down their door, pushing Brandi out of the way and killing Buck.

197)    Defendant Mascorro caused Plaintiffs damages.

198)    Defendants are liable to the Plaintiffs for all resulting damages, including punitive damages, which are more particularly set forth below in the "Damages" section of this Complaint.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE – WRONGFUL DEATH
### (AS TO DEFENDANTS TOWN OF THERMOPOLIS POLICE DEPARTMENT AND MICHAEL G. MASCORRO)

199)    The preceding paragraphs are hereby realleged as if fully restated herein.

200)    This cause of action is asserted against Mascorro and the Town of Thermopolis by Debra Laramore in her capacity as wrongful death representative of Buck Laramore.

201)    At the time of this incident, Mascorro was acting within the scope of his duties as a police officer for the Thermopolis Police Department.

202)    Mascorro owed Buck a duty to exercise reasonable care in his investigation and effecting any arrest.

203)    Mascorro breached that duty by:

a.    Failing to properly investigate the alleged crime committed by Buck;

b.    Failing to heed the DCA's suggestions and advice;

c.    Failing to properly plan to charge Buck;

d.    Failing to properly plan to initiate criminal charges against Buck;

e.    Failing to properly arrest Buck;

f.    Failing to adhere to Wyoming Statutes in effecting a warrantless arrest;

g.    Failing to seek a search warrant;

h.  Failing to seek an arrest warrant;

i.  Failing to engage the least intrusive option to charge, summon, and/or arrest Buck;

j.  Failing to deescalate the situation;

k.  Needlessly escalating the situation;

l.  Failure to obtain permission to enter the Laramore home;

m.  Failing to properly evaluate whether he had legal authority to enter the Laramore home;

n.  Breaking into the Laramore home to arrest Buck for a non-violent misdemeanor without a warrant or exigency;

o.  Failure to adhere to training he received from the POST academy;

p.  Failure to adhere to generally accepted law enforcement standards;

q.  Failure to adhere to Thermopolis Police Department policy and procedures;

r.  Failing to act as a reasonable peace officer;

s.  Failure to exercise the care that a reasonable officer with similar skill, training, and experience would under the same or similar circumstances; and

t.  Failure to exercise reasonable care under all of the circumstances.

204)  The Thermopolis Police Department had a duty to reasonably and properly hire, train, oversee and supervise officers.

205)    The Thermopolis Police Department failed to:

    a. Properly and reasonably evaluate, investigate and perform proper background checks of its employees, including Mascorro;

    b. Train its officers, including Mascorro, on proper use of force, de-escalation techniques and constitutional policing.

    c. Supervise its officers by permitting, encouraging, tolerating, and/or knowingly acquiescing in a policy, procedure, or custom of its officers, including Mascorro, of violating the constitutional rights of citizens;

    d. Adequately monitor and evaluate the performance of its officers, including Mascorro, and their compliance with the laws and policies, practices, and customs with respect to use of force, deliberate indifference and reckless disregard to the public at large.

206)    The acts of the Defendants were a proximate cause of the damages sustained by each of Buck Laramore's wrongful death beneficiaries.

207)    The actions and inactions were a substantial factor in bringing about the Plaintiff's injuries.

208)    The Plaintiff's injuries were reasonably foreseeable consequences of each defendants' actions and inactions.

209)    As a direct and proximate cause of Mascorro's breach(es) Buck Laramore was killed and Buck's wrongful death beneficiaries suffered damages.

210)    Plaintiff Debra Laramore is entitled to damages under W. S. § 1-38-102 for pecuniary and exemplary damages including loss of society, comfort, and support and for economic losses.

211)    Defendants are liable to the Plaintiffs for all resulting damages, including punitive damages, which are more particularly set forth below in the "Damages" section of this Complaint.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE – DIRECT LIABILITY
### (AS TO DEFENDANTS TOWN OF THERMOPOLIS POLICE DEPARTMENT AND MICHAEL G. MASCORRO)

212)   The preceding paragraphs are hereby realleged as if fully restated herein.

213)   Plaintiff Brandi Laramore asserts this claim against Defendant Mascorro and the Thermopolis Police Department.

214)   Law enforcement officers owe a duty of care to criminal suspects and to the public at large to investigate and act as reasonable peace officers of ordinary prudence under like circumstances.

215)   All acts and omissions by defendants alleged herein were acts and omissions which occurred within the course and scope of their duties of employment with Thermopolis Police Department under the color and pretense of the laws, statutes, ordinances, regulations, customs and usage of the State of Wyoming and. Hot Springs County.

216)   Defendants owed a duty of care towards plaintiff.

217)   Defendants negligently breached that duty of care.

218)   As a direct and proximate cause of Defendants actions and inactions, Plaintiff has been damaged in her person, suffering physical and emotional injury, and has been forced to incur attorney's fees and costs, all to her damages in an amount to be proven at trial of this matter.

219)   Defendants are liable to the Plaintiffs for all resulting damages, including punitive damages, which are more particularly set forth below in the "Damages" section of this Complaint.

## SEVENTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT MICHAEL G. MASCORRO, INDIVIDUALLY)

220)    The preceding paragraphs are hereby realleged as if fully restated herein.

221)    This cause of action is asserted against Mascorro by Plaintiff Brandi Laramore individually.

222)    To prove negligent infliction of emotional distress, Plaintiff must prove she suffered emotional distress as a result of observing serious bodily injury to or the death of a relative, or the immediate aftermath without a material change in the condition and location of the victim, and the Defendant's negligence proximately caused the emotional injuries.

223)    Mascorro shot and killed Buck, Brandi's husband, in Brandi's presence and Brandi has suffered mental injuries.

224)    Defendant Mascorro is liable to the Plaintiff for all resulting damages, including punitive damages, which are more particularly set forth below in the "Damages" section of this Complaint.

## EIGHTH CAUSE OF ACTION

### RESPONDEAT SUPERIOR
### (AS TO DEFENDANT MICHAEL G. MASCORRO, INDIVIDUALLY)

225)    The preceding paragraphs are hereby realleged as if fully restated herein.

226)    The Thermopolis Police Department is also vicariously liable for Mascorro's negligence under the doctrine of respondeat superior.

## PRAYER FOR RELIEF & DAMAGES

**WHEREFORE**, the Plaintiffs respectfully request this Court enter judgment against Defendants in an amount supported by the allegations of this Complaint and the evidence at trial as follows:

1.    Judgment against Defendants for general damages in an amount consistent with the allegations of this Complaint and to be proven at trial;

2.    Judgment against Defendants for wrongful death damages in an amount consistent with the allegations of this Complaint and to be proven at trial;

3.    Judgment against Defendants for special damages in an amount consistent with the allegations in this Complaint and to be proven at trial;

4.    Judgment against Defendants for nominal, compensatory and/or punitive damages for deprivation of rights pursuant to 42 U.S.C. § 1983 in an amount consistent with the allegations of this Complaint and to be proven at trial;

5.    Judgment against Defendants for punitive damages in an amount consistent with the allegations of this Complaint and to be proven at trial;

6.    Judgment against Defendants for attorney's fees pursuant to 42 U.S.C. § 1988 in an amount consistent with the allegations of this Complaint and to be proven at trial;

7.    Judgement for costs, pre-judgment and post-judgment interest; and

8.    Order such other appropriate relief as the interests of justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues triable by jury.

**DATED** this 28th day of April, 2025.

/s/ Jack D. Edwards

_____
Jack D. Edwards, 6-3877
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY   83118
Phone:   307.883.2222
Fax:   307.883.0555
jack@edwardslawofficepc.com
kaden@edwardslawofficepc.com
*Attorneys for the Plaintiff*